# UNITED STATES DISTRICT COURT

For
Jury Division Four of Colorado
Civil Division

| | |
|---|---|
| JONATHAN OCHMAN and ALEJANDRA OCHMAN | CIVIL DIVISION |
| *Plaintiff,* | **ELETRONICALLY FILED** |
| v. | Case No.: |
| BENJAMIN D WILHELM and RIVER ROOTS, LLC | |
| | Pleading Type: |
| *Defendant.* | **COMPLAINT** |

Filed on Behalf of Plaintiff(s):
JONATHAN OCHMAN and ALEJANDRA OCHMAN

Counsel of Record for this Party

**J.P. WARD & ASOCCIATES, LLC.**

Joshua P. Ward
Pa. I.D. No.: 320347
Kyle H. Steenland
Pa. I.D. No. 327786

201 South Highland Ave. – Suite 201
Pittsburgh, PA 15206

**JURY TRIAL DEMANDED**

| | |
|---|---|
| Telephone No.: | 412 – 545 – 3016 |
| Fax No.: | 412 – 540 – 3399 |
| E-mail: | jward@fentersward.com |

## UNITED STATES DISTRICT COURT
For
Jury Division Four of Colorado
Civil Division

JONATHAN OCHMAN and ALEJANDRA
OCHMAN

                    *Plaintiff,*

                    v.

BENJAMIN D WILHELM and RIVER
ROOTS, LLC

                    *Defendant.*

CIVIL DIVISION

**ELECTONICALLY FILED**

Case No.:

## **COMPLAINT**

**AND NOW COMES,** Plaintiffs, Jonathan Ochman and Alejandra Ochman, by and through their attorneys, J. P. Ward & Associates and Joshua P. Ward, Esquire, and files the within Complaint of which the following is a statement:

## **PARTIES**

1.      Plaintiff, Jonathan Ochman, is an adult individual and citizen of Pennsylvania who resides at 114 Ash Street, Rochester, Pennsylvania, Beaver County, Pennsylvania, 15074-2611.

2.      Plaintiff, Alejandra Ochman, is an adult individual and citizen of Pennsylvania who resides at 114 Ash Street, Rochester, Pennsylvania, Beaver County, Pennsylvania, 15074-2611.

3.      Defendant Benjamin D Wilhelm is an adult individual and citizen of Colorado who resides at 52825 US Highway 50 East, Pueblo County, Colorado 81025-9705.

4.      Defendant, River Roots, LLC is a Colorado business with its principal place of business located at 52719 US Highway 50 East, Boone, Pueblo County, Colorado, 81025.

5.     Plaintiffs reserve the right to amend the complaint to any and all Jane or John Doe Defendants unknown to him at the time of filing who may be revealed through discovery and pre-trial proceedings.

## JURISDICTION AND VENUE

6.     This action arises under the laws of the Commonwealth of Colorado and is within the subject matter jurisdiction of this Court.

7.     Venue is proper in the Fourth District Court of Colorado pursuant to Diversity of Citizenship and pursuant to 28 U.S.C. § 132 as the action that pertains to this case occurred in the State of Colorado with each Defendant being a citizen of Colorado and each Plaintiff being a citizen of Pennsylvania with the damages of the forthcoming Complaint's actions are in excess of $75,000.

## FACTUAL BACKGROUND

8.     At all times relevant hereto, Plaintiff Jonathan Ochman (hereinafter known as "Plaintiff Ochman") is a citizen of Pennsylvania residing at 114 Ash Street, Rochester, Beaver County, Pennsylvania 15074-2611.

9.     At all times relevant hereto, Plaintiff Alejandra Ochman (hereinafter known as "Plaintiff Mrs. Ochman") is a citizen of Pennsylvania residing at 114 Ash Street, Rochester, Beaver County, Pennsylvania 15074-2611.

10.     At all times relevant hereto, Defendant Benjamin D Wilhelm (hereinafter known as "Defendant Wilhelm") is a citizen of Colorado residing at 52825 US Highway 50 East, Boone, Pueblo County, Colorado 81025.

11.     At all times relevant hereto, Defendant River Roots, LLC (hereinafter known as "Defendant River Roots") is a medical marijuana producer with its principle place of business located at 52719 US Highway 50 East, Boone, Pueblo County, Colorado 81025.

12.     At all times relevant hereto, Plaintiff Ochman and Plaintiff Mrs. Ochman were lawfully married as husband (Plaintiff Ochman) and wife (Mrs. Ochman).

13.     At all times relevant hereto, Defendant Benjamin D Wilhelm, owned and operated Defendant River Roots, LLC.

14.     At all times relevant hereto, Defendant Wilhelm, was responsible for his behavior and the underlying actions that he undertook on his own volition.

15.     At all times relevant hereto, Defendant River Roots owned the property located at 52711 Highway 50 East, Boone, Pueblo County, Colorado 81025.

16.     At all times relevant hereto, 52711 Highway 50 East, Boone, Pueblo County, Colorado 81025 is the location where the actions alleged in this Complaint occurred.

17.     At all times relevant hereto, Defendant River Roots, was responsible to maintain a business environment that did not present foreseeable risks of dangers or harms to other persons.

18.     At all times relevant hereto, Defendant River Roots, was responsible for maintaining business and employment relationships that did not present reasonably foreseeable harm to others specifically persons with whom it conducts business or invites onto its place of business.

19.     At all times relevant hereto, Defendant Wilhelm, as an owner of Defendant River Roots, was responsible for maintaining a safe environment for all persons that are present on the business premises of Defendant River Roots.

20.     At all times relevant hereto, Defendant Wilhelm had a duty to refrain from harassing or causing any harm both physical and mental to other persons specifically those who are on the premises of Defendant River Roots.

21.     At all times relevant hereto, Defendant River Roots, had a duty to ensure that it did not employee or other associate with any individual who presented a reasonable indication of causing harm to others specifically those that were invited onto the premises where it conducts its business.

22.     On or about February 17, 2020, Plaintiff Ochman was a guest of Defendants at Defendant River Roots' principle place of business at 52719 Highway 50 East, Boone, Pueblo County 81025.

23.     In addition to being a guest, Plaintiff Ochman was a business invitee of Defendant River Roots because of his visit being for the purposes of touring and otherwise visiting a farm that produces marijuana.

24.     Plaintiff Ochman was invited onto the premises by Jason Higley (hereinafter known as "Mr. Higley") who was a friend of Plaintiff Ochman.

25.     Accordingly, Plaintiff Ochman travelled to Colorado from his home in Pennsylvania to visit Mr. Higley after Mr. Higley had invited him to do so.

26.     In addition to being Plaintiff Ochman's friend, Mr. Higley was also a prominent party in the operation and management of Defendant River Roots.

27.     Furthermore, Mr. Higley considers himself to be an owner of the business and operates as a superior within the company.

28.     During the nighttime hours on February 17, 2020, Defendant Wilhelm, Mr. Higley and Plaintiff Ochman were on the premises of Defendant River Roots.

29.     During that time, Defendant Wilhelm, Mr. Higley and Plaintiff Ochman were drinking Jim Beam and soda at Higley's residence upon the business premises.

30.     Later that same night, Mr. Higley went to bed, thereby, leaving Defendant Wilhelm and Plaintiff Ochman at Mr. Higley's house.

31.     After leaving for bed Mr. Higley texted Plaintiff Ochman the following:

Higley:     It's late why don you guys go back to bens.

Higley:     Stop giving ben shit! And get him out of my house!

Higley:     the one thing you can do to piss off everyone on the farm is giving ben alcohol! I know you didn't know about ben but I know sara is pissed and I'm not happy myself. Dudes bi polar your closer to a physical fight then you know. Be careful!

Higley:     Your going to get raped lol

Higley:     Stop telling him to do a shot! Please for god sake STOP

32.     It is unclear whether Mr. Higley sent the aforementioned text messages prior to, or before the violent assault on Plaintiff.

33.     Plaintiff went outside Mr. Higley's residence to smoke a cigarette with Defendant Wilhelm, at which time, Defendant Wilhelm leaned towards Plaintiff Ochman and attempted to kiss him multiple times while also grabbing Plaintiff Ochman's testicles.

34.     As a result, Plaintiff Ochman blocked Defendant Wilhelm and denied his physical advancements.

35.     Upon Plaintiff Ochman's blocking of Defendant Wilhelm's advances, Defendant Wilhelm bit Plaintiff Ochman's finger and began to physically assault him before eventually

pinning him to the ground on his back where he continued to punch and otherwise strike Plaintiff Ochman.

36.     Furthermore, while Defendant Wilhelm had Plaintiff Ochman on the ground and was striking him, he licked his face and began to choke him.

37.     The chocking of Plaintiff Ochman caused him to temporarily pass out during part of Defendant Wilhelm's malicious attack.

38.     During the physical assault inflicted by Defendant Wilhelm, he whispered to Plaintiff Ochman "this is going to happen."

39.     As a result of this beating and overt, unsolicited, and undesired physical, sexual, and verbal advancements, Plaintiff Ochman began to scream.

40.     Eventually, Plaintiff Ochman was able to escape the ground and Defendant Wilhelm's person after which, Defendant Wilhelm was driven home by a neighbor.

41.     As a result of the incident, Plaintiff Ochman was forced to receive medical attention due to injuries which include but are not limited to bruising, black and blue eyes and bite marks.

42.     Prior to this incident with Plaintiff Ochman, Defendant Wilhelm was removed from areas where certain employees of Defendant River Roots conducted business. Certain employees had made it known that they refused to be "alone" with Defendant Wilhelm. Upon information and belief Defendant Wilhelm after he made undesired physical contact and sexual advancements towards them. Specifically, Therefore, Defendant River Roots, its owners, principals, agents, employees and personnel were on notice that Defendant Wilhelm was a risk to the health and safety of others upon the property.

## COUNT I

## NEGLIGENT RETENTION & HIRING

*Plaintiff Ochman v. Defendant River Roots*

43.     Each of the above paragraphs is incorporated herein by reference as though the same facts were fully set-forth herein at length.

44.     At all times relevant hereto, Plaintiff Ochman was both a member of the public at large, a business invitee and a guest of Defendant River Roots at the time of Defendant Wilhelm's assault on company property.

45.     At all times relevant hereto, Defendant Wilhelm was a representative of Defendant River Roots and he therefore, acted upon its behalf.

46.     At all times relevant hereto, Defendant River Roots willingly employed Defendant Wilhelm.

47.     At all times relevant hereto, Defendant River Roots while employing Defendant Wilhelm knew and/or should have known that Defendant Wilhelm had a tendency of violent and aggressive contact.

48.     At all times relevant hereto, Defendant River Roots by and through Mr. Higley was aware and forthcoming to others about its knowledge of Defendant Wilhelm's regular misconduct through odd, weird, aggressive and violent behavior towards other persons, involving, but not limited to, unrequested sexual advances.

49.     Under Colorado Law, "the tort of negligent hiring is based on the principle that a person conducting an activity through employees is subject to liability for harm resulting from negligent conduct the employment of improper persons." Connes v. Molalla Transport System, Inc., 1992, 831 P.2d 1316, 1320 (Colo.)

50.     Furthermore, in Colorado, "negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual." Id. at 321.

51.     As such, Colorado law dictates that "negligent hiring theory has been used to impose liability in cases where the employee commits an intentional tort, an action almost invariably outside the scope of employment, against the customer of a particular employer or other member of the public, where the employer either knew or should have known that the employee [is] violent or aggressing, or that the employee might engage in injurious conduct towards third persons. Id.

52.     Accordingly, liability for negligent hiring under Colorado law, "is predicated on the employer's hiring of a person under circumstances antecedently giving the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities. Id.

53.     Due to Defendant Wilhelm being of ownership status of Defendant River Roots his employment responsibilities on behalf of Defendant River Roots includes creating a safe and inclusive workplace environment that eliminates the risks of aggressive conduct from persons that are known or should reasonably be known as highly aggressive or likely to cause physical harm to others.

54.     Therefore, Defendant Wilhelm's physical assault of Plaintiff Ochman on the company property of Defendant River Roots constitutes a failure of his duty.

55.     Additionally, because Defendant River Roots knows of multiple incidents involving Defendant Wilhelm's aggressive and violent behavior with Mr. Higley acknowledging the irreparable behavior of Defendant Wilhelm, Defendant River Roots knew or should have

known that Defendant Wilhelm was likely to engage in violent and aggressive behavior towards Plaintiff Ochman who classifies a guest on the businesses.

56.    As a direct and proximate result of the aforementioned conduct, Plaintiff Ochman has suffered actual damages including but not limited to pain and suffering, anxiety, stress, bruising, black and blue eyes, embarrassment, medical bills, passing out, bite marks, humiliation and emotional and psychological distress.

57.    Furthermore, the Colorado statute for punitive damages states, "in all civil action in which damages are assessed by a jury for a wrong done to the person…and the injury complained of is attended by circumstances of…malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award [them] reasonable exemplary damages. Palmer v. A.H. Robins Co. Inc., 1984, 684 P.2d 187, 213 (Colo.)

58.    Therefore, an award of punitive damages is appropriate in this case because Defendant River Roots conduct of employing and retaining Defendant Wilhelm despite his known aggressive, reckless and outlandish behavior was wanton, reckless, intentional, grossly negligent and shocking to the conscious so that the imposition of punitive damages is necessary.

**WHEREFORE,** Plaintiff demands that judgement is entered in his favor and against defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00), punitive damages, plus interest and cost.

## COUNT II

## <u>BATTERY</u>

*Plaintiff Ochman v. Defendant Wilhelm*

59.     Each of the above paragraphs is incorporated herein by reference as though the same facts were fully set-forth herein at length.

60.     At all times relevant hereto, Plaintiff Ochman did not consent to any bodily contact or appearance or threat of bodily contact to his person by Defendant Wilhelm.

61.     At all times relevant hereto, any and all contact that Defendant Wilhelm made to Plaintiff Ochman's person was done so with the intent of causing a harmful or offensive bodily contact.

62.     During the events on or about February 17, 2020, Defendant Wilhelm inflicted harmful bodily contact to Plaintiff Ochman's person which includes but is not limited to biting, punching and choking each of which caused physical harms that include but are not limited to passing out from choking, black and blue eyes, multiple bite marks and a bruise on his near his right cheek bone.

63.     In addition to the harmful contact initiated by Defendant Wilhelm, he inflicted offensive bodily contact to Plaintiff Ochman which includes but is not limited to grabbing Plaintiff Ochman's testicles.

64.     Furthermore, once Defendant Wilhelm pinned Plaintiff Ochman to the ground, his whispering of the phrase "this is going to happen" indicates an intention and desire to cause harmful or offensive bodily contact as Defendant Wilhelm stated a desire for such contact despite Plaintiff Ochman continually resisting the physical contact by blocking Defendant Wilhelm's advancements and pushing Defendant Wilhelm away once he began throwing punches.

65.     Under Colorado law, the tort of battery is committed when a person acts "intending to cause a harmful or offensive contact with the person of another…and an offensive [or harmful] contact with the person of the other directly or indirectly results." White v. Muniz, 2000, 999 P.2d 814, 816 (Colo.)

66.     Thus, Defendant Wilhelm committed battery against Plaintiff Ochman through the harmful and offensive bodily contact that he both executed and intended to execute upon Plaintiff Ochman's person.

67.     As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered actual damages including but not limited to pain and suffering, anxiety, stress, bruising, black and blue eyes, embarrassment, medical bills, passing out, bite marks, humiliation and emotional and psychological distress.

68.     Furthermore, the Colorado statute for punitive damages states, "in all civil action in which damages are assessed by a jury for a wrong done to the person…and the injury complained of is attended by circumstances of…malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award [them] reasonable exemplary damages. Palmer v. A.H. Robins Co. Inc., 1984, 684 P.2d 187, 213 (Colo.)

69.     Therefore, an award of punitive damages is appropriate in this case because Defendant Wilhelm's outrageous and unfounded harmful and offensive contact to Plaintiff Ochman's person was wanton, reckless, intentional, grossly negligent and shocking to the conscious so that the imposition of punitive damages is necessary.

**WHEREFORE,** Plaintiff demands that judgement is entered in his favor and against defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00), punitive damages, plus interest and cost.

## COUNT III

### ASSAULT

*Plaintiff Ochman v. Defendant Wilhelm*

70.     Each of the above paragraphs is incorporated herein by reference as though the same facts were fully set-forth herein at length.

71.     At all times relevant hereto, during the events on or about February 17, 2020, Defendant Wilhelm intended to cause Plaintiff Ochman to have an imminent apprehension of harmful or offensive bodily contact.

72.     At all times relevant hereto, during the events on or about February 17, 2020, Defendant Wilhelm placed Plaintiff Ochman in imminent apprehension of harmful or offensive bodily contact to his person.

73.     At all times relevant hereto, any and all imminent apprehension that Plaintiff Ochman had of harmful or offensive bodily contact was with the anticipation that such contact was going to be inflicted by Defendant Wilhelm.

74.     As a direct result of Defendant Wilhelm's advancements and subsequent punching, Plaintiff Ochman attempted to push Defendant Wilhelm away from him due to seeing punches thrown towards him.

75.     Accordingly, he both saw and anticipated the forthcoming harmful bodily contact that Defendant Wilhelm inflicted upon him while both were standing.

76.     Likewise, once Plaintiff Ochman was pinned to the ground by Defendant Wilhelm, he was on his back and still conscious when Defendant Wilhelm continued to punch and began choking him.

77.     As a direct result of being on his back and still being conscious at the commencing of the choking, Plaintiff Ochman saw the forthcoming choking and began to scream.

78.     Under Colorado law, "the elements of assault are that: (1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with [their] person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive. Bohrer v. DeHart, 1996, 943 P.2d 1220, 1224 (Colo. Ct. App.)

79.     As such, Defendant Wilhelm committed assault under Colorado law as he inflicted harmful or offensive bodily to the person of Plaintiff Ochman by causing bruising, bite marks, black and blue eyes as direct result punching, biting, grabbing and choking him during which, Plaintiff Ochman anticipated this conduct evident by his screaming and attempts to push away Defendant Wilhelm both before and during the assault.

80.     As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered actual damages including but not limited to pain and suffering, anxiety, stress, bruising, black and blue eyes, embarrassment, medical bills, passing out, bite marks, humiliation and emotional and psychological distress.

81.     Furthermore, the Colorado statute for punitive damages states, "in all civil action in which damages are assessed by a jury for a wrong done to the person...and the injury complained of is attended by circumstances of...malice or insult, or a wanton and reckless

disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award [them] reasonable exemplary damages. Palmer v. A.H. Robins Co. Inc., 1984, 684 P.2d 187, 213 (Colo.)

82.     Therefore, an award of punitive damages is appropriate in this case because Defendant Wilhelm's outrageous and unfounded harmful and offensive contact and imminent apprehension of such contact to Plaintiff Ochman's person was wanton, reckless, intentional, grossly negligent and shocking to the conscious so that the imposition of punitive damages is necessary.

**WHEREFORE,** Plaintiff demands that judgement is entered in his favor and against defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00), punitive damages, plus interest and cost.

## COUNT IV
## RESPONDEAT SUPERIOR THEORY
*Plaintiff Ochman v. Defendant Wilhelm and Defendant River Roots*

83.     Each of the above paragraphs is incorporated herein by reference as though the same were fully set-forth herein at length.

84.     At all times relevant herein, Defendant Wilhelm as the owner of Defendant River Roots had an employment duty to entertain guests, clients, invitees, and perspective clients specifically those in which the company or its employees invite to the company's property.

85.     At all times relevant herein, Defendant River Roots understood this duty held by Defendant Wilhelm and operated as if Defendant Wilhelm was undertaking those responsibilities.

86.     At all times relevant herein, Mr. Higley was an owner of Defendant River Roots and he invited Plaintiff Ochman to Defendant River Roots property and into the presence of Defendant Wilhelm.

87.     At all times relevant herein, Plaintiff Ochman was a guest to company property and company ownership in addition to being a perspective client and business invitee of Defendant River Roots which therefore, makes his treatment on company property a responsibility of Defendant Wilhelm per his responsibilities as one of the companies owners.

88.     At all times relevant herein, Defendant Wilhelm's role as an owner maintains that he is responsible for ensuring that guests and perspective clients are not subject to aggressive torts such as assault and battery while he is entertaining them on the premises of Defendant River Roots.

89.     At all times relevant herein, Defendant Wilhelm as an employee and owner of Defendant River Roots is liable for torts committed by the company when he is the party that committed said torts during the course of his employment and its subsequent duties.

90.     Consequently, and all times herein, Plaintiff Ochman's entire interaction with Defendant Wilhelm fell under the duties of Defendant Wilhelm's employment with Defendant River Roots.

91.     On or about February 17, 2020, Defendant Wilhelm assaulted and battered Plaintiff Ochman on Defendant River Roots company property while he was a guest of Mr. Higley.

92.     Therefore, at the time of Defendant Wilhelm's torts of assault and battery, he was acting in accordance with his employment duties.

93.     Under Colorado law and its respondeat superior doctrine, "an employer is liable for torts of an employee acting within the scope of employment." Stokes v. Denver Newspaper Agency, LLP, 2006, 159 P.3d 691, 693 (Colo. Ct. App.)

94.     Additionally, Colorado law dictates that "if the tort is committed during the service of an employer's business, it is within the scope of employment." Id.

95.     As such, Defendant River Roots is liable to Plaintiff Ochman under the respondeat superior theory as Defendant Wilhelm committed the torts of battery and assault while entertaining a guest, business invitee and perspective client of the business on company property during which, he was acted in accordance of his employment due to his duty of entertaining guests and potential clients of the business.

96.     Furthermore, Defendant Wilhelm is liable to Plaintiff Ochman under the respondeat superior theory as he committed the torts of battery and assault while performing duties of his employment because he as an owner of Defendant River Roots is subject to the maintenance of safety of Plaintiff Ochman during his time as a guest and perspective client of the business.

97.     As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered actual damages including but not limited to pain and suffering, anxiety, stress, bruising, black and blue eyes, embarrassment, medical bills, passing out, bite marks, humiliation and emotional and psychological distress.

98.     Furthermore, the Colorado statute for punitive damages states, "in all civil action in which damages are assessed by a jury for a wrong done to the person...and the injury complained of is attended by circumstances of...malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award [them] reasonable exemplary damages. Palmer v. A.H. Robins Co. Inc., 1984, 684 P.2d 187, 213 (Colo.)

99.     Therefore, an award of punitive damages by both defendants is appropriate in this case because Defendant's outrageous and unfathomable aggressive and unnecessary conduct

towards Plaintiff Ochman while acting under the duties and obligations of his employment with Defendant River Roots was wanton, reckless, intentional, grossly negligent and shocking to the conscious so that the imposition of punitive damages is necessary.

WHERERFORE, Plaintiff demands that judgement is entered in his favor and against the Defendant, in an amount in excess of one-hundred thousand dollars ($75,000.00), punitive damages, plus interest and cost.

## COUNT V

### PREMISES LIABILITY

*Plaintiff Ochman v. Defendant River Roots*

100.    Each of the above paragraphs is incorporated herein by reference as though the same were fully set-forth herein at length

101.    At all times relevant hereto, Defendant River Roots owed a duty to Plaintiff Ochman, as a business invitee, to be protected from any and all reasonable risks and harms on its premises.

102.    At all times relevant hereto, Defendant River Roots as the owner of the property on which the actions for this Complaint occurred, is required to exercise reasonable care for its business invitees and is therefore required to take all reasonable efforts to prevent injuries to business invitees on its property from all risks of injury that are reasonably foreseeable when the injury occurred.

103.    At all times relevant hereto, Defendant Wilhelm's aggressive, weird, and violent tendencies were reasonably foreseeable and therefore, constitute a risk of injury to invitees that Defendant River Roots is required to take all reasonable steps to prevent.

104.    At all times relevant hereto, River Roots knew of the risks associated with Defendant Wilhelm's aggressive, weird, and violent behavior evident by Mr. Higley informing Plaintiff Ochman that Defendant Wilhelm "gets weird."

105.    Prior to this incident with Plaintiff Ochman, Defendant Wilhelm was removed from areas where certain employees of Defendant River Roots conducted business and otherwise occupied due to those employees being uncomfortable with Defendant Wilhelm after he made undesired physical contact and sexual advancements towards them. Therefore, Defendant River Roots, its owners, principals, agents, employees and personnel were on notice that Defendant Wilhelm was a risk to the health and safety of others upon the property.

106.    At all times relevant hereto, Defendant River Roots property tax purposes are agricultural.

107.    Under Colorado law, a defendant's liability for premises liability is predicated on § 13-21-115 which states, "[i]n any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3). Lombard v. Colorado Outdoor Educ. Center, Inc., 2008, 187 P.3d 565, 574 (Colo.)

108.    Additionally, §13-21-115(3)(c)(i) states, "except as otherwise provided in subparagraph (ii) of this paragraph (c), "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." West's C.R.S.A. §13-21-115(3)(c)(i)

109.    Accordingly, §13-21-115(3)(c)(ii) states, "if the landowner's real property is classified for property tax purposes as agricultural...an invitee may recover for damages caused

by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew." West's C.R.S.A. §13-21-115(3)(c)(ii)

110.    As such, Defendant River Roots is liable to Plaintiff Ochman for damages under the statute for premises liability because Plaintiff Ochman's injuries occurred on the premises of Defendant River Roots due to the reasonably foreseeable aggressive, weird, and violent tendencies of Defendant Wilhelm.

111.    Furthermore, these known risks that created the injuries to Plaintiff Ochman could have been reasonably avoided had Defendant River Roots taken the precaution of ensuring that Mr. Higley or any other employee or agent of the company did not leave Defendant Wilhelm alone with Plaintiff Ochman.

112.    As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered actual damages including but not limited to pain and suffering, anxiety, stress, bruising, black and blue eyes, embarrassment, medical bills, passing out, bite marks, humiliation and emotional and psychological distress.

113.    Furthermore, the Colorado statute for punitive damages states, "in all civil action in which damages are assessed by a jury for a wrong done to the person...and the injury complained of is attended by circumstances of...malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award [them] reasonable exemplary damages. Palmer v. A.H. Robins Co. Inc., 1984, 684 P.2d 187, 213 (Colo.)

114.    Therefore, an award of punitive damages by is appropriate in this case because Plaintiff Ochman suffered injuries on Defendant River Roots property due to the outrageous and unfounded conduct of Defendant Wilhelm that was a known and reasonably foreseeable risk to

Defendant River Roots that could have reasonably been avoided thereby, making Defendant River Roots defiance to its reasonable care responsibilities as a property owner wanton, reckless, intentional, grossly negligent and shocking to the conscious so that the imposition of punitive damages is necessary.

**WHERERFORE,** Plaintiff demands that judgement is entered in his favor and against the Defendant, in an amount in excess of one-hundred thousand dollars ($75,000.00), punitive damages, plus interest and cost.

**COUNT VI**

**LOSS OF CONSORTIUM**

*Plaintiff Mrs. Ochman v. Defendant Wilhelm and Defendant River Roots*

*(Plead in connection with all proceeding counts)*

115.     Each of the above paragraphs is incorporated herein by reference as though the same were fully set-forth herein at length

116.     At all times relevant hereto, wife-Plaintiff Mrs. Ochman is and has been the wife of husband-Plaintiff Ochman.

117.     As a direct and proximate result of the conduct of both Defendant Wilhelm and Defendant River Roots, as described above, wife-Plaintiff, Mrs. Ochman, has been and/or may be in the future obliged to spend sums of money for medical, medicinal and care and attention, in an effort to treat and cure husband-Plaintiff, Mr. Ochman, of his injuries.

118.     As a further direct and proximate result of the conduct of both Defendant Wilhelm and Defendant River Roots, as described above, wife-Plaintiff, Mrs. Ochman, has been and/or may be in the future be deprived of the aid, assistance, comfort, consortium and society of husband-Plaintiff, Mr. Ochman, all of which has been and/or will be to her great damage and loss.

**WHEREFORE**, Plaintiff Mrs. Ochman, demands that judgment is entered in her favor and against both Defendant Wilhelm and Defendant River Roots, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000.00), plus interest and costs.

Respectfully submitted,

**J.P. WARD & ASOCCIATES, LLC.**

Date: <u>January 12, 2021</u>

By: _____
         Joshua P. Ward (Pa. I.D. No. 320347)
         Kyle H. Steenland (Pa. I.D. No. 327786)

J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Plaintiff